A05A1720. ALCOVY SHORES WATER AND SEWERAGE
AUTHORITY v. JASPER COUNTY et al.
(626 SE2d 560)

MIKELL, Judge.

Pursuant to the Service Delivery Act, OCGA § 36-70-20 et seq. (the "Act"), Jasper County, the City of Monticello and the City of Shady Dale entered into an agreement (the "Service Agreement") to implement a local government service delivery strategy. Characterizing the Service Agreement as improperly reducing the scope of its territory, the Alcovy Shores Water and Sewerage Authority ("ASWSA") filed an action for declaratory judgment and injunctive relief against Jasper County, the City of Monticello, the City of Shady Dale, and the Jasper County Water and Sewer Authority ("defendants") seeking, among other things, a declaration that the defendants had no right to ASWSA's territory and an injunction prohibiting the defendants from interfering with ASWSA's right to provide water service within its territory. ASWSA appeals the trial court's grant of the defendants' motion for summary judgment and denial of its motion for summary judgment. We affirm.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (1) (405 SE2d 474) (1991). Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from

it in the light most favorable to the nonmovant. *Supchak v. Pruitt,* 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

Although ASWSA claims that material issues remain for the trier of fact, it fails to argue how the disputed facts are relevant. The controlling facts are not in dispute. ASWSA was created by the General Assembly through local legislation in 1979. See Ga. L. 1979, p. 3177 et seq. A 1980 amendment to the creating legislation established ASWSA's "project area" as "all that area within a radius of five miles from the intersection of the centerlines of Lake Shore Drive and Decatur Street in the Alcovy Shores Subdivision of Jasper County." See Ga. L. 1980, p. 4412. The project area, which includes portions of Butts County, Jasper County, and Newton County, does not purport to be exclusive to ASWSA. Id. Furthermore, ASWSA's creating legislation provides that the law "shall be regarded as supplemental and additional to powers conferred by other laws." Ga. L. 1979, p. 3190, § 26.

The Jasper County Water and Sewer Authority (the "Jasper County Authority") was created by the General Assembly pursuant to local legislation in 1999. See Ga. L. 1999, p. 4595 et seq. Under the 1999 legislation, "the authority may exercise any of its powers or provide any of its services inside the boundaries of any local government within Jasper County." Id. at p. 4599, § 3 (13). Thus, with respect to that portion of ASWSA's project area lying in Jasper County, the jurisdiction of ASWSA and the Jasper County Authority overlap.

The General Assembly passed the Act with the express intent of minimizing "inefficiencies resulting from duplication of services and competition between local governments and to provide a mechanism to resolve disputes over local government service delivery, funding equity, and land use." OCGA § 36-70-20. The Act required "[e]ach county and municipality [to] execute an agreement for the implementation of a local government service delivery strategy as set forth in this article by July 1, 1999." OCGA § 36-70-21. As a part of the implementation of the service delivery strategy, the Act instructed the counties and municipalities (1) to identify all local government services presently provided therein, and (2) to designate which local government or authority would provide such services within specific geographic areas of the county. OCGA § 36-70-23. In its formulation, "[t]he strategy shall identify steps which will be taken to remediate or avoid overlapping and unnecessary competition and duplication of service delivery." OCGA § 36-70-24 (1).

As mandated by the Act, Jasper County, the City of Monticello, and the City of Shady Dale entered into the Service Agreement on June 24, 1999. See OCGA §§ 36-70-21; 36-70-25. The Service Agreement set the service area for ASWSA as the area then actually being

served by ASWSA, which was substantially less than ASWSA's project area under its creating legislation. The Service Agreement also established a service area for the Jasper County Authority, which was defined as those areas of Jasper County not otherwise assigned to another service provider. Thus, a portion of ASWSA's project area was included within the Jasper County Authority's service area. On July 16, 1999, the Department verified that the Service Agreement included the components and minimum criteria required by the Act. See OCGA § 36-70-26.

1. ASWSA claims that the trial court erred in concluding that the defendants were authorized to reduce its project area as defined by the General Assembly. ASWSA contends that because it was established as a separate "political subdivision of the State of Georgia and a public corporation," Ga. L. 1979, p. 3179, § 2, that a local action by the defendants could not take precedence over ASWSA's creating legislation. We disagree. First, the Service Agreement did not purport to modify ASWSA's creating legislation. The defendants' reliance on *Wood v. Gwinnett County*, 243 Ga. 833 (257 SE2d 258) (1979), is thus misplaced. See id. at 834-835 (where an authority is not an extension of the county, its creating legislation may not be amended by the county commissioners). Second, the Service Agreement does not prohibit ASWSA from providing services within its project area. Rather, the effect of the Service Agreement on ASWSA is through the Act, which forbids the issuance of any "state administered financial assistance or grant, loan, or permit" to any local government or authority for a project which is inconsistent with a verified service delivery strategy. OCGA § 36-70-27 (a). Thus ASWSA, to the extent it relies on any state-administered financial assistance or grant, loan, or permit, may not be able to complete a project outside the service area designated by the Service Agreement. The salient point, however, is that the Service Agreement and the Act do not alter ASWSA's project area as defined in its creating legislation.

2. ASWSA further contends that because Jasper County, the City of Monticello, and the City of Shady Dale could have designated ASWSA's service area as co-existent with its project area that the Service Agreement was a local action improperly "trumping" ASWSA's creating legislation. Again, we disagree. The Act "is intended to minimize inefficiencies resulting from duplication of services and competition between local governments." OCGA § 36-70-20. In this case, there was a potential for duplication of services because the General Assembly had authorized ASWSA to provide services in its project area, but had also authorized the Jasper County Authority to operate in the Jasper County portion of ASWSA's project area. Under ASWSA's reasoning, the Service Agreement should have provided for overlapping service areas. This outcome, however, undermines the

stated intent of the Act to avoid duplication of services and is not required by any express provision of the Act. Furthermore, while overlapping service areas are allowed by the Act, this is the exception to the rule. "In the event two or more local governments within the county are assigned responsibility for providing identical services within the same geographic area, *the strategy shall include an explanation of such arrangement.*" (Emphasis supplied.) OCGA § 36-70-23 (2). Nothing in the Act requires local governments to recognize a project area of an authority such as ASWSA in designating service areas. Thus, we conclude that Jasper County, the City of Monticello, and the City of Shady Dale acted in conformity with the Act in designating ASWSA's service area and were not required to designate a service area for ASWSA which was the same as ASWSA's project area.

3. ASWSA also claims that the trial court failed to recognize that the Act was an improper delegation of legislative power to the local governments entering into the Service Agreement. In its complaint for declaratory relief, ASWSA asserted that this delegation of power under the Act was prohibited by the Georgia Constitution. ASWSA fails to show that it notified the Attorney General of its contention that the Act was unconstitutional, which is required by law in the case of declaratory judgment actions. See OCGA § 9-4-7 (c) ("[i]f a statute of the state . . . is alleged to be unconstitutional, the Attorney General of the state shall be served with a copy of the proceeding and shall be entitled to be heard"); *Bd. of Ed. of Hall County v. Shirley*, 226 Ga. 770 (1) (177 SE2d 711) (1970) (notice to attorney general is mandatory and jurisdictional). Thus, the trial court correctly declined to address this issue.

4. ASWSA further contends that the trial court failed to recognize (i) that ASWSA was entitled to serve its project area, (ii) that because a county's limited powers must be strictly construed, the commissioners of Jasper County were not authorized to enter into an agreement eliminating most of ASWSA's project area, (iii) that an amendment to ASWSA's creating legislation could only be accomplished by new legislation, properly advertised, (iv) that in this case general law did not repeal special law, and (v) that the defendants failed to ask the legislature for local legislation to reduce ASWSA's territory. These claims of error assume that the Service Agreement and the Act improperly modified ASWSA's project area as defined in its creating legislation. As determined in Divisions 1 through 3 above, however, the Service Agreement and the Act do not modify ASWSA's project area, the Service Agreement was in conformity with the Act, and ASWSA cannot now argue that the Act was unconstitutional. It follows that these claims of error have no merit.

5. ASWSA further claims that the trial court disregarded the fact that ASWSA's creating legislation failed to reserve rights to another authority. ASWSA's creating legislation provides that it "does not in any way take from Jasper County or any municipality located therein ... the authority to own, operate and maintain a water system, a sewerage system ... or to issue revenue bonds." Ga. L. 1979, p. 3190, § 26. ASWSA contends that, because its creating legislation only refers to counties and municipalities, the General Assembly did not reserve to the Jasper County Authority the right to operate within ASWSA's project area. However, ASWSA's creating legislation was enacted in 1979 and the Jasper County Authority was not created by the General Assembly until 1999. At that time, and with presumed knowledge of ASWSA's creating legislation, the General Assembly chose to permit the Jasper County Authority to "exercise any of its powers or provide any of its services inside the boundaries of any local government within Jasper County," without excepting ASWSA's project area. Ga. L. 1999, p. 4599, § 3 (13). "[I]t is presumed that statutes are enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it." *Dudley v. State*, 273 Ga. 466, 468 (542 SE2d 99) (2001). Furthermore, ASWSA's creating legislation provides that the legislation was only intended "to provide an additional and alternative method for the doing of the things authorized thereby," indicating that the General Assembly did not intend for ASWSA to be an exclusive provider within its project area. Ga. L. 1979, p. 3190, § 26. Thus, we find no merit to the proposition that ASWSA's creating legislation implicitly prohibits the Jasper County Authority from providing services within ASWSA's project area.

6. ASWSA also argues that the trial court failed to consider that ASWSA was not a party to the Service Agreement but cannot get funding or a permit to operate in its remaining territory while the Service Agreement stands. ASWSA was not a party to the Service Agreement because it was not a county or municipality directed by the Act to enter into an agreement setting forth a service delivery strategy. See OCGA §§ 36-70-21; 36-70-25. Thus, its absence as a party to the Service Agreement is contemplated by the Act and is not a defect in the Service Agreement. The Act also provides that "no state administered financial assistance or grant, loan, or permit shall be issued to any local government or authority which is not included in a department verified strategy or for any project which is inconsistent with such strategy." OCGA § 36-70-27 (a). Thus, to the extent ASWSA is ineligible for state-administered funding or permits, this is also contemplated by the Act and is not a proper ground for relief under ASWSA's petition for declaratory judgment and injunctive relief.

7. ASWSA finally contends that the trial court erred in failing to determine that revenue from the Jasper County Authority's water system secured its revenue bonds and in accepting the defendants' argument that the Act secured its bonds. Additionally, ASWSA contends that the trial court erred to the extent it applied principles of laches and estoppel. We find these issues to be moot. The trial court's order granting summary judgment states no specific reasons for the order, and the trial court makes no finding with respect to the security for the Jasper County Authority's bonds or principles of laches and estoppel. These assertions of error address arguments which were put forth by the defendants below, but in view of our other findings we do not need to consider these issues.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 24, 2006.

*Lambert & Reitman, M. Joseph Reitman, Jr.,* for appellant.
*King & Spalding, Nolan C. Leake, Ranse M. Partin, Chambliss, Higdon, Richardson, Katz & Griggs, Thomas F. Richardson, W. Dan Roberts,* for appellees.